IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SVETLANA GLOUKHOVA<br>          Plaintiff, | CIVIL ACTION |
| v. | NO.  22-2223 |
| CSL BEHRING LLC,<br>          Defendant. | |

### MEMORANDUM OPINION

Plaintiff Svetlana Gloukhova brings a wide range of claims against her former employer, Defendant CSL Behring LLC ("CSL"), a global biotechnology company manufacturing and selling plasma-derived medicinal products in over one hundred countries around the world, for whom she worked for approximately three and a half years before she was terminated. Defendant now moves to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), only her claim brought under the Pennsylvania Whistleblower Law, 43 Pa. Const. Stat. § 1422 (the "PWL").  For the reasons that follow, Defendant's Motion will be denied.

### I.   FACTUAL BACKGROUND

The following facts are drawn from the Amended Complaint and, for the purposes of the motion to dismiss, will be taken as true.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  As a pharmaceutical company CSL is required to comply with patient safety laws and regulations in each country and jurisdiction in which it sells its products.  As Global Head of Regions, Safety and Pharmacovigilance, Gloukhova's primary job responsibilities were to enact systems and oversight infrastructure to ensure CSL's compliance with the safety laws and regulations in each country and jurisdiction in which CSL operates.

In serving that role Gloukhova came to believe that CSL's safety compliance infrastructure was significantly under-resourced because CSL was unwilling to invest adequate

1

financial resources into its global safety operations. As a result, CSL did not comply with and was in violation of its own internal policies and many of the patient safety laws and regulations, including requirements to correctly report patient safety related information to the Food and Drug Administration (FDA) and its international counterparts and archiving/storing source documents related to adverse events in accordance with laws and regulations.

Gloukhova reported to her superiors, including CSL's Chief Medical Officer William Mezzanotte, that CSL's critical safety efforts were under-funded and in violation of safety laws and regulations in the United States and other countries around the world and that CSL Safety Officers and what she refers to as Full-Time Equivalents ("FTEs") were absent and misused.

At two separate meetings attended by Gloukhova, Mezzanotte and Frank Mauler (interim Head of Safety) in 2021, Gloukhova reported about the severe degree of CSL's non-compliance with its legal and regulatory obligations and pleaded for additional resources in an effort to bring CSL into compliance. Specifically, she reported that: (1) CSL's patient safety organization "is significantly under-resourced for the task to assure PV [Pharmacovigilance] compliance in 107 countries; so, it['s] unfit [to] assume [the] responsibility of [the] SO [Safety Officer] network in current state;" (2) that CSL's violation of safety laws and regulations threatened its ability to conduct its business operations in certain countries: "[the] Current SO [Safety Officer] network cannot fulfill the task of establishing and maintaining PV systems in all countries of CSL operations, which may lead to failure to operate and significant fines;" and (3) that the absence of and misuse of Safety Officers and FTEs resulted in waste of CSL's resources and diversion from patient safety related tasks. While acknowledging that the global safety apparatus within CSL was under-resourced, Mezzanotte refused to address the concerns raised by Gloukhova and instead blamed the lack of resources on others within CSL.

Things came to a head at the April 2021 annual meeting of Gloukhova's work group, which included company executives and Safety Officers.  During the meeting, Mezzanotte faced challenging questions from the company's Safety Officers related to many of the same issues that Gloukhova had reported about previously, including the lack of resources of Safety Officers, lack of technological tools, non-compliance with regulations, and confusion with respect to responsibility for safety-related studies.  At the meeting, when Gloukhova corroborated and supported the concerns and reports raised by the Safety Officers, Mezzannotte interrupted her and, when she tried to speak, he yelled at her: "Lana, not you again!"

A few months later, despite a recent glowing performance review, Gloukhova was put on a Performance Improvement Plan (PIP) which criticized her for "repeatedly rais[ing] complaints concerning processes and the organization without taking into account the Company's situation and previous decisions."  During a meeting about the PIP, Gloukhova was provided with a "Final Written Warning" and was told "we are going to fire you."  And, she was in fact fired a little more than a month later.

## II.   LEGAL STANDARDS

The Federal Rules of Civil Procedure require complaints to include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  *Great Western Mining*, 615 F.3d at 177 (quoting *Twombly*, 550 U.S. at 556).  "In other words, 'there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'" *Id.*

(quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips*, 515 F.3d at 231. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556-57 (internal quotation marks omitted)). "In other words, 'there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips*, 515 F.3d at 234-35). In determining the adequacy of a complaint, the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

### III.   DISCUSSION

#### A.   Liability under the Pennsylvania Whistleblower Law

The Pennsylvania Whistleblower Law (the "PWL") is "chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *O'Rourke v. Commonwealth*, 566 Pa. 161, 175 (2001) (internal citations omitted); *see also Pa. Game Comm'n v. State Civ. Serv. Comm'n (Toth)*, 561 Pa. 19, 29 n.10 (2000) (describing the PWL as "specifically designed

4

to protect employees from adverse employment actions when making a good faith report[.]"). The PWL's proscriptions only apply to those deemed to be an employer under the statute which under the PWL is either (1) "a public body" *i.e.* an entity "which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body;" or (2) "an individual, partnership, association, corporation for profit, or a corporation not for profit] which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body[.]" 43 Pa. Const. Stat. § 1422. Plaintiff alleges that Defendant is an employer under both categories. Defendant disagrees on both accounts.[1]

### i. Public Body

Plaintiff's Amended Complaint includes a factual statement that CSL is an employer under the PWL because it receives Medicare and Medicaid reimbursements from the Commonwealth of Pennsylvania.[2] As this is a factual assertion, and must be viewed in the light most favorable to Gloukhova, at this stage it is taken as true. But, CSL's contention is that, without more, the allegation is insufficient to bring it within the purview of the PWL in that, as a matter of law, receipt of Medicaid and Medicare reimbursements do not in and of themselves transform a nongovernmental employer such as CSL into a "public body" under the statute. Whether CSL is correct is hotly contested but not definitively decided by the courts.

---

[1] CSL challenges Gloukhova's allegation that it "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body[,]" as a legal conclusion and unsupported by any facts in her Amended Complaint. Gloukhova makes no argument to challenge this conclusion. As such, CSL's arguments that it is not an employer at least on this theory is deemed uncontested and, thus, waived. E.D. Pa. Local R. Civ. P. 7.1(C); *see e.g., Levy-Tatum v. Navient Sols., Inc.*, 183 F.Supp.3d 701, 712 (E.D. Pa. 2016) (plaintiff's failure to address some of defendant's arguments in a response brief on a motion to dismiss resulted in abandonment of those claims).

[2] The Amended Complaint also alleges that CLS receives grants and tax credits from the Commonwealth—but neither party has focused on this allegation in their briefs.

5

Looking first to the Supreme Court of Pennsylvania—because on questions of state statute interpretation the highest state courts "are the final arbiters of [state statute] meaning and appropriate application. . . ," *Beal v. Missouri Pac. R. R. Corp.*, 312 U.S. 45, 50 (1941)—it has referenced the issue once, but in dicta.  Specifically, in a footnote in *Harrison v. Health Network Lab'ys Ltd. Partnerships*, the Pennsylvania Supreme Court noted that neither party disputed that the defendant was a public body under the PWL because it was "a recipient of Medicare and other forms of public assistance payments[.]"[3]  232 A.3d 674, 677 n.3 (Pa. 2020).  Although "[c]onsidered dicta by the state's highest court may . . . provide a federal court with reliable indicia of how the state tribunal might rule[,] . . . a federal court should be circumspect in surrendering its own judgment concerning what the state law is on account of dicta."  *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980).  Here, given that the *Harrison* court did not—because it was not asked to—provide any analysis of whether receipt of Medicare and Medicaid funds renders an entity an employer within the meaning of the PWL, the footnote provides minimal insight into how the Supreme Court of Pennsylvania might rule if presented with the question directly.

In the absence of any precedent from Pennsylvania's Supreme Court on this issue, it is necessary to predict how that court would decide . . . [,]" *Winterberg v. Transportation Ins. Co.*, 72 F.3d 318, 321-22 (3d Cir. 1995), by examining " (1) what [it] has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting the state law; and (4) decisions from other jurisdictions that have discussed the

---

[3] The caselaw uniformly, across both approaches, treats Medicaid or Medicare funding interchangeably for the purpose of this issue.  *See e.g.*, *Harrison*, 232 A.3d at 677 n.3; *see also Eaves-Voyles v. Almost Fam., Inc.*, 198 F. Supp.3d 403 (M.D. Pa. 2016); *Connearney v. Main Line Hosps., Inc.*, 2015 WL 9302912, at *8 (E.D. Pa. Dec. 22, 2015).

issues we face here." *Boyanowski v. Cap. Area IU*, 215 F.3d 396, 406 (3d Cir. 2000). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *Winterberg*, 72 F.3d at 321-22 ("[W]e must also give due deference to decisions of the lower Pennsylvania courts."); *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (holding that decisions of the lower state courts can be given "due regard, but not conclusive effect[.]") (internal quotation marks and citations omitted); *Am. Equip. Leasing v. McGee's Crane Rental, Inc.*, 2002 WL 32341794, at *3 n.3 (E.D. Pa. Dec. 11, 2002) ("[F]ederal district court opinions are not to be given greater weight than state court decisions.").

Two parallel, but diametrically opposed, approaches persist as to whether Medicaid funding on its own may establish an entity as a "public body" potentially liable under the PWL. One approach is found in the Pennsylvania Superior Court's decision in *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 575-577 (Pa. Super. 1999). The other is found in an Eastern District of Pennsylvania case *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521, 1526-27 (E.D. Pa. 1991).

      a. <u>Plain Meaning</u>

Under the *Denton* approach, espoused by the Plaintiff here, the focus is the legislative intent of the General Assembly in that under Pennsylvania's Statutory Construction Act of 1972 "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. Cons. Stat. § 1921(a). The first step in determining that intent is to look to the "words of a statute": if they "are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Cons. Stat. §

7

1921(b).  Pennsylvania intermediate courts reason that such is the case here.  *Denton*, 739 A.2d at 576 (citing *Riggio v. Burns*, 711 A.2d 497, 500 (Pa. Super. 1998)).  *Denton* found that "[t]he plain meaning of the language of the [PWL] makes it clear that it was intended to apply to all agencies that receive public monies under the administration of the Commonwealth" which specifically includes instances where a defendant is "a recipient of Medicaid funding[.]"  *Id.*; *see also Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 475 n.8 (Pa. Super. 2017) (finding that because the defendant "receives funds from the Commonwealth through its participation in Pennsylvania's Medicaid program [it] is, therefore, an 'employer' within the meaning of the [PWL]"); *see also Zglinicki v. Am.'s Home Health Servs., LLC*, 2017 WL 11551825, at *3 (E.D. Pa. Sept. 11, 2017) (finding a defendant is an employer under the language of the PWL since the defendant receives Medicaid funding); *Gratz v. Ruggiero*, 2017 WL 2215267, at *8 (E.D. Pa. May 19, 2017) ("We therefore reject [the] argument that, as a non-profit entity that merely received Medicaid funding, it is not subject to liability under the [PWL.]"); *Connearney*, 2015 WL 9302912, at *8; *Mayer v. Boys & Girls Clubs of Philadelphia Inc.*, 2011 WL 4467669, at *5 (E.D. Pa. Sept. 23, 2011) ("This Court finds the reasoning in *Denton* compelling and consistent with the plain text of the statute[.]"); *Ellis v. Allegheny Specialty Prac. Network*, 2013 WL 411477, at *3-4 (W.D. Pa. Feb. 1, 2013) (affirming *Denton*'s reasoning that the PWL's plain meaning and finding the PWL "extends to entities that receive funds that merely are administered by the Commonwealth.").

     A contingent of federal court cases, however, led by *Cohen* take a different approach—which the Defendant urges the Court here to adopt—finding the opposite, to predict that "the Supreme Court of Pennsylvania will not interpret the Pennsylvania legislature's use of the words 'funded by or through' to mean that the receipt of Medicaid reimbursements is sufficient to bring

8

it within the definition of a 'public body[.]'" *Cohen*, 772 F. Supp. at 1526; *see also Dorsey*, 2019 WL 2016261, at *3; *Grim v. May Grant Assocs.*, 2019 WL 358520, at *4 (E.D. Pa. Jan. 29, 2019); *Bickings v. NHS Hum. Servs.*, 2014 WL 307549, at *7 (E.D. Pa. Jan. 27, 2014); *Tanay v. Encore Healthcare, LLC*, 810 F.Supp.2d 734, 743-44 (E.D. Pa. 2011); *Ortiz v. Priority Healthcare Grp. LLC*, 2019 WL 3240016, at *4 (M.D. Pa. July 18, 2019); *Adams v. HCF Mgmt.*, 2018 WL 3388404, at *3-5 (W.D. Pa. July 12, 2018); *Eaves-Voyles v. Almost Fam., Inc.*, 198 F. Supp.3d 403 (M.D. Pa. 2016) ("[T]he Supreme Court of Pennsylvania would hold that the receipt of Medicaid and Medicare reimbursements, without more, is insufficient to transform a private employer into a 'public body'[.]"); *Zorek v. CVS Caremark Corp.*, 2014 WL 12487695, at *5-7 (M.D. Pa. Apr. 16, 2014).

Without significant analysis of Pennsylvania's Statutory Construction Act of 1972, the courts that have adopted this approach conclude that the PWL cannot be so expansive so as to render hospitals, nursing homes, doctors, ambulance companies, and the like potentially liable in that it was "clearly not the intention of the Pennsylvania legislature to include them as funded public bodies[.]" *Cohen*, 772 F. Supp. at 1526-27; *Grim*, 2019 WL 358520, at *4 ("Private entities that simply serve individuals who pay for their medical needs with Medicaid and Medicare, but do not otherwise receive any funding or grants from the government, should not be considered a public body under the PWL."). "A contrary result[,]" this approach posits, "would unreasonably expand the scope of the [PWL] beyond the legislature's intent by virtue of government assistance programs meant to benefit individuals as opposed to private business entities." *Eaves-Voyles*, 198 F. Supp.3d at 409. In a non-precedential opinion, the Third Circuit agreed. *Lomaskin v. Siemens Med. Sols. USA*, Inc., 820 F. App'x 138, 141 (3d Cir. 2020) ("[A] private entity does not qualify as a public body merely because it receives state funds through

9

contracts with public programs or government agencies.").

This Court finds that the approach set forth in *Denton* more closely hews to the intention of the General Assembly. This is, in part, because the *Cohen* court bases its interpretation of the language of a since amended version of the PWL—which defined an employer as "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." 43 Pa. Const. Stat. § 1422 (amended 2014)—which was later changed by a 2014 amendment—now defining an employer as a public body "or [an individual, partnership, association, corporation for profit, or a corporation not for profit] which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body[.]" 43 Pa. Const. Stat. § 1422. The *Cohen* court noted that the PWL "was intended by the legislature to be limited to monies which were appropriated by the legislature for the purpose of aiding 'public bodies' in pursuit of their public goals. This language was obviously not intended to make an individual or corporation a 'public body' solely on the basis that monies were received by it from the state as reimbursement for services rendered." *Cohen*, 772 F. Supp. at 1527. However, the Pennsylvania legislature indicated its contrary intent in 2014 by amending the definition of an employer to additionally include the "performance of work for or the provision of services to a public body" in addition to the "public body" "funded" category of an employer. 43 Pa. Const. Stat. § 1422; *see also Gratz*, at *7–8 (noting that the *Cohen* approach "does not take into account the 2014 amendments to the [PWL] and relies on cases that interpreted the prior version of the law."). As such, the statute covers both entities funded by or performing the acts of public bodies and this distinction is no longer a live issue under the statute.

The *Cohen* approach posits a second argument that the PWL's language "most naturally

10

refers to specific appropriations" by the Commonwealth, rather than funds that "pass-through" the state from the federal government to private entities. *Eaves-Voyles*, 198 F. Supp.3d at 409. "[T]he words 'funded by or through' suggest a specifically appropriated amount of State funds to a public body" as opposed to pass-through funds which, under the *Cohen* approach, if deemed to constitute a public body, would "unreasonably expand" the statute "to include any private business that accepted payment from a recipient of government assistance[,]" *i.e.*, a grocery store that accepts food stamps. *Cohen*, 772 F. Supp. at 1527; *Grim*, 2019 WL 358520, at *4; *Tanay*, 810 F.Supp.2d at 743-44 (finding "funded in any amount by or through" is "naturally read" to mean money "specifically appropriated by a government unit" which "may come in the form of periodic or one-time payments"[.]). By contrast, the Pennsylvania intermediate courts which have addressed the pass-through argument have determined that the PWL naturally includes pass-through funds, such as Medicaid, because the PWL "clearly indicates that it is intended to be applied to bodies that receive not only money appropriated *by* the Commonwealth, but also public money that passes *through* the Commonwealth." *Denton*, 739 A.2d at 576 (emphasis original); *see also Saltzman*, 166 A.3d at 475 n.8.

Furthermore, the *Denton* court, and other Pennsylvania Superior court decisions as well as federal district court decisions, have specifically rejected the approach adopted by *Cohen* and by other federal courts in that the state court's "subsequent and binding case law directs us to a different conclusion." *Denton*, 739 A.2d at 576; *Riggio*, 711 A.2d at 500 (stating in no uncertain terms that, even though it need not reach the Medicaid PWL issue, the court is not bound by *Cohen*); *Saltzman*, 166 A.3d at 475 n.8 (following *Denton* in spite of *Cohen* and a number of federal district court decisions—*Eaves-Voyles* and *Tanay*—deciding the opposite); *see e.g*, *Zglinicki*, 2017 WL 11551825, at *3 (relying on *Denton* and directly contradicting the then most

11

recent federal district decision applying *Cohen*); *see also Gratz*, 2017 WL 2215267, at *8 (rejecting the *Cohen* approach while specifically noting the 2014 amendments to the PWL). And, tellingly, recent federal district courts have questioned *Cohen*'s continued legitimacy in that "[t]he Cohen court began with the legislative history because 'no Pennsylvania appellate court has yet interpreted the Pennsylvania Whistleblower Law'—a statement which is no longer true and, even if it was, does not justify leaping over the statute's plain language." *Romer v. MHM Health Pros.*, 2020 WL 6747418, *5 n.6 (M.D. Pa. Nov. 17, 2020)(internal citations omitted); *contra Adams*, 2018 WL 3388404, at *4 ("*Denton* appears to have been rejected by the majority of courts that considered it.").

Notably, following the *Harrison* and *Lomaskin* decisions—albeit that one reached the conclusion that Medicaid and Medicare funding bring an entity within the "public body" employer prong of the PWL only in dicta and the other is non-precedential—federal district courts have rejected the *Cohen* approach in favor of the *Denton* approach "[b]ecause Pennsylvania's intermediate appellate court decisions are strong indicators of how the Pennsylvania Supreme Court would rule—and because *Denton* is both consistent with the plain language of the statute and has been favorably cited by later Pennsylvania decisions." *Romer*, 2020 WL 6747418, at *4; *see also Kolakowski v. Washington Hosp.*, 2022 WL 874285, at *7 (W.D. Pa. Mar. 24, 2022); *Heckman v. UPMC Wellsboro*, 2021 WL 2826716, at *19 (M.D. Pa. July 7, 2021); *contra Chiancone v. Bayada Home Health Care, Inc.*, 2022 WL 1185892, at *6 (E.D. Pa. Apr. 21, 2022).

## IV. CONCLUSION

In short, there is significant discrepancy between the two approaches. The Supreme Court of Pennsylvania's dicta—indicating at minimum the court's willingness to rely upon

*Denton*—in addition to the Pennsylvania intermediate courts consistent use of *Denton*, weighs strongly in favor of applying the *Denton* approach. *Harrison*, 232 A.3d at 677 n.3; *see e.g.*, *Saltzman*, 166 A.3d at 475 n.8. The federal district courts, particularly following *Harrison* and *Lomaskin*, do not provide "other persuasive data that the highest court of the state would decide otherwise". *West v. Am. Tel. & Tel. Co.*, 311 U.S. at 237; *contra Chiancone*, 2022 WL 1185892, at *6 (applying *Cohen* and not *Denton*, this is the only decision post-*Harrison* or *Lomaskin* to do so, but where a plaintiff also provided only conclusory and limited statements as to defendant's funding source, not as here). Finally, the logic underlying plain language statutory interpretation in Pennsylvania, mixed with the fact that the Third Circuit's decision was non-precedential, further indicates the *Denton* approach is the one the Pennsylvania Supreme Court would likely use. It is therefore reasonable to predict that when faced with this question, the Supreme Court of Pennsylvania would find that Medicaid or Medicare funding alone is sufficient to justify liability under the PWL. *See e.g.*, *Heckman*, 2021 WL 2826716, at *19 ("Given the Superior Court's consistent interpretation of the [PWL] as covering entities which receive Medicaid reimbursements, and the recent decision in *Harrison*, the Court concludes it most appropriate to adopt the Superior Court's holding and reasoning."); *Romer*, 2020 WL 6747418, at *4 ("Because Pennsylvania's intermediate appellate court decisions are strong indicators of how the Pennsylvania Supreme Court would rule—and because *Denton* is both consistent with the plain language of the statute and has been favorably cited by later Pennsylvania decisions—the court will follow *Denton*."). Accordingly, the motion shall be denied.

    An appropriate order follows.

                                            **BY THE COURT:**

                                            **/s/Wendy Beetlestone, J.**
                                            **WENDY BEETLESTONE, J.**