IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SVETLANA GLOUKHOVA,<br>Plaintiff, | CIVIL ACTION |
| v. | |
| CSL BEHRING LLC,<br>Defendants. | NO. 22-2223 |

## MEMORANDUM OPINION

Plaintiff Svetlana Gloukhova seeks to recover damages from her former employer, Defendant CSL Behring LLC ("CSL"), which terminated her employment after approximately three and a half years of service. Gloukhova alleges violations of the Pennsylvania Whistleblower Law ("PWL"), 43 Pa. C.S. §§ 1421-1428, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Presently pending is CSL's Motion for Partial Summary Judgment as to Gloukhova's PWL claim, pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, CSL's motion will be denied.

### I.   FACTUAL BACKGROUND

The following facts are undisputed. CSL is a biotechnology company that manufactures and sells plasma-based biologics. The company is headquartered in King of Prussia, Pennsylvania, and it is structured as a limited liability company ("LLC") whose sole member is its parent, CSLB Holdings, Inc.

In May 2018, CSL hired Gloukhova to serve as its Head of Regions, Safety, and Pharmacovigilance. While serving in that position—which Gloukhova held throughout her tenure at the company—Gloukhova came to believe that CSL's safety compliance infrastructure was significantly under-resourced, and that as a result, CSL was not complying with its internal

1

procedures or applicable patient safety regulations.  She met with CSL leadership to discuss these concerns, which she believes the company never adequately addressed.

Shortly before her termination, Gloukhova's manager enrolled her in a performance improvement plan ("PIP") to address what he described as "continuing performance and behavioral deficiencies."  The PIP was accompanied by a "final written warning" informing Gloukhova that her "[f]ailure to comply with these expectations, company policies or expectations of your position will result in further discipline, up to and including termination."  About two weeks later, Gloukhova filed an internal complaint via CSL's Speak Up Hotline alleging that the PIP was "direct harassment and retaliation from management."  The following month, November 2021, Gloukhova's manager informed her that she had not achieved the PIP deliverables, and CSL terminated her employment.

## II.   LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  If this showing is made, the moving party is entitled to judgment as a matter of law if the "nonmoving party has failed to make a sufficient showing

on an essential element of her case with respect to which she has the burden of proof." *Id.*

## III.   DISCUSSION

Pennsylvania's Whistleblower Law "aims to promote openness in governmental operations and governmental compliance with the law" by "protecting employees from adverse employer action following a report of actual or suspected violation of federal, state or local law." *Javitz v. Luzerne Cnty.*, 293 A.3d 570, 578 (Pa. 2023).  But, and this is the crux of the matter in this motion, the statute's protections only apply to the employees of a "public body"—*i.e.*, an entity "which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." 43 Pa. C.S. § 1422.[1]  In her amended complaint, Gloukhova alleges that CSL is a public body, and thus subject to PWL liability, because it receives: (1) Medicare and Medicaid reimbursements from Pennsylvania; (2) public grants from Pennsylvania; and, (3) tax credits from Pennsylvania.  CSL's motion for summary judgment motion argues that the record supports none of these allegations.

### A.   Medicare/Medicaid Reimbursements

While Gloukhova's complaint alleges that CSL receives reimbursements from the Medicare and Medicaid programs, the summary judgment record fails to bear this allegation out.  To the contrary:  Gloukhova's Right-to-Know Law requests to state and local officials for "records related to money and/or funds paid to and/or received by CSL Behring LLC" yielded no relevant results (save those related to a 2013 grant, discussed below), and CSL's senior finance director attested in a sworn declaration that as a pharmaceutical manufacturer, it "does not receive any reimbursements or payments from the Centers for Medicare and Medicaid Services

---

[1] The PWL further covers employers "which receive[] money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body," 43 Pa. C.S. § 1422, but Gloukhova previously waived her argument that CSL falls within this provision.  *See* Memorandum Opinion (ECF No. 22), at 5 n.1.

3

(CMS)." Attempting to demonstrate otherwise, Gloukhova points to several pieces of evidence supposedly showing that CSL receives Medicare/Medicaid payments, but nothing she cites establishes a genuine dispute of fact on this point.

First, Gloukhova points to several supposed admissions made by CSL in the course of a prior False Claims Act lawsuit involving two of its pharmaceutical products: Vivaglobin and Hizentra. *See United States ex rel. Lager v. CSL Behring LLC, et al.*, No. 4:14-cv-00841 (E.D. Mo. terminated Jan. 20, 2016). Specifically, Gloukhova maintains that in its motion to dismiss that suit, CSL "acknowledged" that these two drugs "are covered by and subject to reimbursement by Medicare." Thus, she argues, CSL remains bound by that admission. But in actuality, those filings say nothing about CSL's receipt of reimbursements. To the contrary, they state that "**Pharmacies** that dispense Vivaglobin or Hizentra to Medicare beneficiaries submit claims to the federal government," and that "Medicare and some Medicaid programs reimburse **pharmacies** for DME drugs . . . ." (emphasis added). That is entirely consistent with CSL's argument in this case that Medicare/Medicaid reimbursements go to healthcare providers, not pharmaceutical manufacturers, and that CSL does not receive any payments from these government programs.

Second, Gloukhova cites a June 2021 press release from CSL announcing that one of its products, Hizentra, was "approved [] for coverage under Medicare Part B for the treatment of Chronic Inflammatory Demyelinating Polyneuropathy (CIDP)." But this evidence does not establish or even suggest that those payments for Hizentra are remitted to CSL itself—an arrangement that would be highly unusual under the Medicare/Medicaid program. *See, e.g.*, *Merck & Co. v. U.S. Dep't of Health & Hum. Servs.*, 385 F.Supp.3d 81, 90-91 (D.D.C. 2019) ("Pharmaceutical manufacturers are not health care providers," and as such "do not receive

4

payment for their products from CMS.").

Finally, Gloukhova points to her own deposition, in which she testified that CSL receives reimbursements for the drug Privgen. To the extent this testimony differs from the evidence adduced by CSL, she argues, that is a dispute of fact for resolution by a jury. But "beliefs without factual support" do not establish a genuine dispute of material fact. *Ekhato v. Rite Aid Corp.*, 529 F. App'x 152, 156 (3d Cir. 2013) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999); *see also Lujan v. Nat. Wildlife Found.*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). And as the deposition transcript makes clear, Gloukhova's testimony on this point was just that. Specifically, when pressed on the basis for her testimony that CSL receives Medicare/Medicaid reimbursements, Gloukhova clarified that she did not fully understand the drug reimbursement process, but explained that Privgen is "relatively expensive, unless it's covered by Medicare and Medicaid. And obviously CSL would not get that revenue if it wouldn't be covered by Medicare and Medicaid. So [the reimbursement] does come to CSL, in my medical doctor understanding." In other words, her testimony did not offer any first-hand knowledge regarding CSL's receipt of Medicare/Medicaid reimbursements, but rather described her understanding that reimbursement payments to providers eventually trickle their way down to drug manufacturers. That assertion, unsupported by any evidence, fails to satisfy her burden under Rule 56. *Jones*, 198 F.3d at 414; *see also* Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2727.2 (4th ed., Apr. 2023 update) ("As is clear by Rule 56(c)'s express requirement that the nonmoving party must support its factual positions . . . the opposing party [cannot] fulfill this obligation merely by asserting, by affidavit or otherwise, that a genuine issue exists for trial.").

### B. Public Grants

Similarly, the summary judgment record is bereft of any evidence that CSL received governmental funding in the form of public grants during Gloukhova's period of employment (*i.e.*, 2018-21). The only public grant for which there is any record is a July 2013 economic development grant that CSL received through the Pennsylvania First Program. That grant was accompanied by a contract stating that payments would be "conditioned upon completion of any Special Conditions . . . incorporated into the Contract," and the contract further specified a termination date of June 2015. Thus, even assuming that the receipt of a grant from this economic development program transformed CSL into a "public body" for purposes of PWL liability—the contract itself is silent on this point, and the only relevant case cited by either party is both non-precedential and readily distinguishable[2]—the company's obligations pursuant to that grant ceased almost three years before she was hired.

Gloukhova protests that this "read[s] into the PWL a time limitation for determining public-body status that does not exist in the statute," and that once CSL accepted the 2013 grant, its status changed permanently and irrevocably to that of a public body. But this argument is at odds with the text of the statute, which defines "public body" as an entity "which ***is funded*** in any amount by or through Commonwealth or political subdivision authority." 42 Pa. C.S. § 1422 (emphasis added). This present tense conjugation of the verb "to fund" most naturally describes entities that are presently receiving receive state or local funding—not those that once received funding but no longer do so. Had the legislature intended otherwise, "it just as easily could have added 'was or has been' . . . . But [the legislature] did not add these words, and we

---

[2] *See Arner v. PGT Trucking, Inc.*, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010) (finding an allegation that the defendant had received economic development grants sufficient to survive a motion to dismiss, but adding that whether the receipt of this state funding made the defendant a public body for purposes of PWL liability "is an issue which can only be determined at the summary judgment stage, or at trial").

cannot." *United States v. Davis*, 576 F.2d 1065, 1069 (3d Cir. 1978) (Aldisert, J., concurring); *see also Carr v. United States*, 560 U.S. 438, 448 (2010) ("[W]e have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *Commonwealth v. Berryman*, 649 A.2d 961, 965 (Pa. Super. 1994) ("[W]ords are to be considered in their grammatical context," and "[t]he scope of 'grammatical context' includes the tenses of verbs used in a statute.").

      This reading of the PWL finds further support in Pennsylvania's Statutory Construction Act, which instructs that "[w]ords used in the past or present tense shall include the future." 1 Pa. C.S. § 1902. By application of the principle *expressio unius est exclusio alterius*, by implication the present tense when used in a statute does not generally describe things that took place in the past. This was the reasoning of the Pennsylvania Superior Court in *Weiner v. Fisher*, 871 A.2d 1283 (Pa. Super. 2005), a case holding that the Medical Care Availability and Reduction of Error Act ("MCARE") precluded a retired physician from testifying as expert witnesses. That statute requires expert witnesses in physician malpractice actions to "[b]e engaged in or retired within the previous five years from active clinical practice," which the appellant argued refers to the years preceding the alleged malpractice. *Id.* at 1286 (quoting 40 Pa. C.S. § 1303.512(b)(2)). Rejecting this argument, the court observed that the MCARE "is written entirely in the present tense to set the qualifications for an expert who is testifying," and so the five years must be measured time of the testimony. *Id.* "To apply a different temporal reference point" and permit a long retired physician to testify would violate the statute's plain text. *Id.*; *see also Demmy v. Pa. State Police*, 611 A.2d 782, 786 (Pa. Commw. 1992) ("This language is conveyed in the present tense and can only be interpreted as prescribing a present application . . . .").

The United States Supreme Court reached the same conclusion after considering an analogous provision of the Dictionary Act, a federal statute instructing that "words used in the present tense include the future as well as the present." *Carr*, 560 U.S. at 448 (citing 1 U.S.C. § 1). As with Pennsylvania's Statutory Construction Act, the implication of this directive is that "present tense generally does not include the past." Thus, the Court in that case concluded that a statute requiring registration by a sex offender who "travels in in interstate or foreign commerce, or enters or leaves, or resides in, Indian country" did not extend to individuals who had undertaken their travel prior to the statute's enactment. *Id.* at 458 (quoting 18 U.S.C. § 2250(a)(2)(B)). The same reasoning applies in this case, where a "public body" is an entity that "is funded in any amount by or through Commonwealth or political subdivision authority," not one that "was funded" or "has ever been funded." 42 Pa. C.S. § 1422.

None of the authorities cited by Gloukhova provide any basis for departing from this plain reading. First, she points to *Davis v. Calgon Corp.*, 627 F.2d 674 (3d Cir. 1980), for the proposition that courts should not read time limiting provisions into statutes. That case is inapposite. It involved an order dismissing the plaintiff's Age Discrimination in Employment Act ("ADEA") suit on the grounds that it was filed more than 180 days after the alleged unlawful practice. *Id.* at 675. The Third Circuit reversed, concluding that the ADEA's 180-day deadline did not apply to the plaintiff's claim, and declining to "read in a time limitation provision that Congress has not seen fit to include." *Id.* at 677 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 816 n.19 (1980)). That holding is entirely orthogonal here, where the question is whether a private business's one-time receipt of an economic development grant renders it a "public body" in perpetuity for purposes of PWL liability. Equally off-base is Gloukhova's citation to *Riggo v. Burns*, 711 A.2d 497 (Pa. Super. 1998) (en banc), which involved a medical center that

"admitted to the receipt of yearly appropriations from the Commonwealth of Pennsylvania," including during the year of the plaintiff's employment—the inverse of the scenario presented by this case. *Id.* at 499. And Gloukhova's final authority, *In re Nat. Forge Co.*, 344 B.R. 340 (W.D. Pa. 2006), simply instructs that a statute should be "sensibly interpreted according to its plain terms," with no additional provisions added. *Id.* at 370. Again, this proposition is both self-evident and entirely unhelpful to Gloukhova's argument, where it is she who seeks to read the past tense conjugation of "to fund" into the PWL, contrary to the statute's text.

### C. Tax Credits

#### i. *CSL Behring's Receipt of Tax Credits*[3]

While CSL Behring acknowledges that its parent company, CSLB Holdings, Inc., receives several Pennsylvania tax credits, it argues that no tax credits are received by CSL Behring directly. In support of this proposition, the company points to the following undisputed facts from the record:

- CSL Behring is a single member LLC, and its sole member is CSLB Holdings.

- As a single member LLC, CSL Behring has elected to be classified as a disregarded entity for both federal and state tax purposes. *See* Treas. Reg. § 301.7701-3(a) ("[A]n eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner.").

- As a result of this election, CSL Behring files no Pennsylvania tax returns, and its activities were instead reported on CSLB Holdings' filings.

- Because CSL Behring files no Pennsylvania tax returns, the only entity to apply for and receive Pennsylvania tax credits was CSLB Holdings, which did so during the years of Gloukhova's employment.

Based on these facts, CSL Behring argues that "the Commonwealth of Pennsylvania did not

---

[3] For clarity, this section will refer to CSL by its full name, CSL Behring.

award tax credits to CSL Behring," and that Pennsylvania tax credits therefore cannot serve a basis for PWL liability.

But it is far from self-evident that the tax credits received by CSLB Holdings should not be imputed to CSL Behring. The latter is a wholly owned subsidiary whose assets are listed on its parent's tax filings and whose liabilities could perhaps be offset by any tax credits awarded to the parent. And while CSL Behring contends in its summary judgment brief that this is not the case, its arguments on this point are entirely unsupported. The only record evidence it cites, a declaration from one of the company's officers, is silent on whether the tax credits awarded to CSLB Holdings may be imputed to CSL Behring for purposes of PWL liability. And to the extent this argument raises a purely legal question, no authority is cited for this proposition.

As this Court's local rules explain, every motion must be "accompanied by a brief containing a concise statement of the legal contentions *and authorities relied upon* in support of the motion." E.D. Pa. Loc. Civ. R. 7.1(c) (emphasis added). And "courts generally should not address legal issues that the parties have not developed through proper briefing." *Sw. Pa. Growth Alliance v. Browner*, 121 F.3d 106, 122 (3d Cir. 1997). Thus, "an argument consisting of no more than a conclusory assertion . . . will be deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997); *see also Anthony v. Small Tube Mfg. Corp.*, 535 F.Supp.2d 506, 511 n.8 (E.D. Pa. 2007) ("Courts in this District have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because 'zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court.'" (internal citation omitted)).

### ii.     Whether Pennsylvania Tax Credits are Funding

In addition to the argument that it does not receive Pennsylvania tax credits, CSL also

argues that tax credits are not "funding" for purposes of PWL liability.  But for two reasons, this argument too is waived.  First, CSL advances the argues that tax credits are not funding as a conditional of its primary argument—*i.e.*, that CSL does not receive tax credits at all.  Specifically, the company's summary judgment brief states that "[e]ven assuming tax credits awarded to CSLB Holdings, Inc. could be imputed to CSL Behring LLC, Plaintiff's argument still fails, because being awarded tax credits does not constitute being 'funded,' as the latter term is used in the PWL."  As just explained, CSL waived the first step of that argument by failing to support it with evidence from the record and citations to relevant authority.  Thus, it follows that the argument's second step—CSL's contention that tax credits are not funding for purposes of PWL liability—has also been waived.

Even so, CSL's contention that the receipt of tax credits does not trigger PWL liability is once again unsupported by both the summary judgment record and CSL's briefing.  Indeed, the company acknowledges in its brief that it "was unable to find any cases addressing whether the receipt of state or local tax credits equates to being funded by the Commonwealth or a political subdivision for purposes of the PWL."  And the analogies it attempts to draw from the case law that is available fall short.  CSL lists a number of cases describing "funding" for purposes of PWL liability as "a specifically appropriated amount of State funds." *Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1527 (E.D. Pa. 1991); *see also Lomaskin v. Siemens Med. Solutions USA, Inc.*, 820 F. App'x 138, 141 (3d Cir. 2020) ("[T]he phrase 'funded by or through' in [the PWL's] definition of 'public body' refers to money 'specifically appropriated by a governmental unit.'" (quoting *Grim v. May Grant Assocs.*, 2019 WL 358520, at *4 (E.D. Pa. Jan. 29, 2019))); *Dorsey v. Merakey USA*, 2019 WL 2016261, at *2 (E.D. Pa. May 6, 2019) (same); *Eaves-Voyles v. Almost Fam., Inc.*, 198 F.Supp.3d 403, 409 (M.D. Pa. 2016) (same); *Gratz v. Ruggiero*, 2017

WL 2215267, at *7 (E.D. Pa. May 19, 2017) ("[C]ompanies that are performing services for public bodies with public monies."). But these cases either dealt with the question of whether payment pursuant to a state contract constitute "funding" for purposes of the PWL—an issue unrelated to the facts of this case—or else considered whether Medicare/Medicaid payments do—an argument previously considered at the motion to dismiss stage. *See* Memorandum Opinion (ECF No. 22). None sheds any light on how Pennsylvania's courts would characterize a tax credit for purposes of PWL liability, or whether those credits constitute state funding.

### IV.   CONCLUSION

While CSL demonstrated that no dispute of material fact exists regarding its receipt of Medicare/Medicaid payments and public grants, it waived its argument regarding Pennsylvania tax credits by failing to identify the authorities upon which it relied, as required by Local Rule 7.1(c). As a result, its motion for summary judgment on Gloukhova's PWL claim will be denied.

An appropriate order follows.

                                      **BY THE COURT:**

                                      **/s/Wendy Beetlestone, J.**

                                      _____
                                      **WENDY BEETLESTONE, J.**